IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS ARTHUR CLEVELAND,<br><br>Defendant. | Case No. 25-3180-01-CR-S-MDH |

### PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by R. Matthew Price, United States Attorney, and Patrick Carney, Assistant United States Attorney, and the defendant, Dennis Arthur Cleveland ("the defendant"), represented by Marshall Miller.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count 1 of the Information charging him with mail fraud, in violation of 18 U.S.C. § 1341. The defendant further agrees to and hereby does plead guilty to Count 2 of the Information charging him with aggravated identity theft, in violation of 18 U.S.C. § 1028A. Finally, the defendant

agrees to plead guilty to Count 3 of the Information charging him money laundering, in violation of 18 U.S.C. § 1957. The defendant also agrees to forfeit to the United States the property described in the forfeiture allegation. By entering into this plea agreement, the defendant admits that he knowingly committed these offenses and is in fact guilty of these offenses.

**3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offenses to which he is pleading guilty are as follows:

> At all times, DENNIS ARTHUR CLEVELAND (CLEVELAND) was the owner and operator of several businesses that were collectively known as "Affordable Towing." At all times, CLEVELAND owned and operated a towing company, a used vehicle dealership, a salvage dealer, a body shop, and a vehicle repair business under the umbrella company known as Affordable Towing. CLEVELAND was the owner and operator of all of these businesses. CLEVELAND directed all employees within these businesses. CLEVELAND was aware of the actions, both legal and illegal, of all of his employees. CLEVELAND adopted the actions of his employees as he directed them to carry out his instructions by any means necessary. CLEVELAND financially benefitted from the illegal and fraudulent conduct committed by his employees.
>
> While operating Affordable Towing, CLEVELAND directed his employees to obtain mechanic's liens and replacement titles from the Missouri Department of Revenue (DOR) for all of the vehicles that came into his company's possession. CLEVELAND wanted the liens and titles for the vehicles so that he could then resell the vehicles and pocket all proceeds from each sale. CLEVELAND directed his employees to take any steps necessary to obtain a lien or title from DOR. CLEVELAND, through his direction of others, either transmitted or caused to be transmitted documents through the United States Postal Service (USPS). CLEVELAND, through his employees, caused documents to be sent to DOR through the USPS that contained material misrepresentations and forged signatures in order to fraudulently obtain Abandoned Property and Mechanic Lien titles for the vehicles in his and his company's possession.
>
> CLEVELAND, through his control of Affordable Towing, caused numerous titles to be applied for through his actions or the actions of his employees between April of 2021 and November of 2023. In each instance, CLEVELAND, through his direction of his employees, caused application documents to be mailed through the USPS that falsely represented the authorization of the vehicle's owner to release a vehicle into CLEVLAND'S possession. In truth and fact, the lawful owners of these vehicles never gave CLEVELAND or Affordable Towing permission to take their vehicles. The lawful owners of these vehicles never signed any documents that CLEVELAND caused to be submitted to DOR authorizing him obtain the aforementioned replacement titles or liens.

2

Further, the presence of the signature of the lawful owners of these vehicles on documents sent to DOR were in fact forgeries that CLEVELAND caused to be submitted to fraudulently obtain mechanics liens or titles. These fraudulently obtained documents, if obtained, would have allowed CLEVELAND to sell these vehicles from his used car lot. In each instance, CLEVELAND'S and Affordable Towing's use of the forged signatures of the vehicle's lawful owner was done to attempt to obtain, or actually obtain, a mechanic's lien or a replacement title for the vehicle without the lawful permission of the vehicle's true owner.

CLEVELAND sold the vehicles that his company and his employees were able to obtain either a mechanic's lien or replacement title for. CLEVELAND then received the monies obtained through the sale of these vehicles with fraudulently obtained mechanic's liens and replacement titles that had been applied for and ultimately received through the USPS. Those vehicles that CLEVELAND and Affordable Towing failed to obtain a mechanic's lien or replacement title for were directed by CLEVELAND to be sent to a local scrapyard. CLEVELAND was paid money for each vehicle that he had sent to the local scrapyard to be scrapped. CLEVELAND received at least $220,000 in cash for the vehicles that were taken by his employees to the local scrapyard. Ultimately, CLEVELAND and his employees deposited all monies received from the sale of the used vehicles obtained with fraudulent documents that stole the identity of the lawful vehicle owners, as well as the vehicles sent to be scrapped, into an Affordable Towing business account held with Oakstar Bank. Affordable Towing's business account was entirely under the control of CLEVELAND, and he received all proceeds from either the fraudulent sale or illegal scrapping of those vehicles in the possession of CLEVELAND and Affordable Towing.

## COUNT ONE
### (Mail Fraud – 18 U.S.C. 1341)

At all times during the course and conduct of the aforementioned scheme, the owner of 2018 Toyota Tundra was identified as W.C. On January 28, 2021, W.C. passed away from natural causes. After W.C.'s death, CLEVELAND caused a mechanic lien title application packet to be sent to DOR to obtain a replacement title. The application packet that CLEVELAND directed to be sent to DOR was signed, prepared, notarized, and mailed through the USPS with what was represented as the legal and legitimate signature of W.C., despite the fact that W.C. had previously passed away. On or about April 6, 2021, DENNIS ARTHUR CLEVELAND, through his business, Affordable Towing, and his employees, within Greene County, Missouri, within the Western District of Missouri, caused the USPS to be used to send a fraudulent title application, affidavit for a mechanic lien title, and a towing log sheet containing W.C.'s forged signature. CLEVELAND caused documents to be transmitted through the USPS that contained false and fraudulent information in order to obtain title and lien documents that he had not been authorized to receive by the actual owner of this vehicle, W.C. All in violation of Title 18, United States Code, Section 1341.

3

## COUNT TWO
### (Aggravated Identity Theft – 18 U.S.C. 1028A)

On or about April 6, 2021, said date being approximate, the defendant, DENNIS ARTHUR CLEVELAND, knowingly caused to be used, without the lawful authority, the means of identity and identification of W.C. in relation to the offense of mail fraud, pursuant to Title 18, United States Code, Section 1341, under Count One. CLEVELAND caused W.C.'s signature and identity to be used in application documents, by using his forged signature, that were sent to DOR to receive a false and fraudulent mechanic's lien and replacement title for the 2018 Toyota Tundra that had belonged to W.C. Specifically, CLEVELAND, through his control of Affordable Towing and his employees, caused to be sent, an Application for Missouri Title and License, Form 108, an affidavit for a Mechanic Lien Title, Form 1062, and a towing log sheet, that purported to be signed by W.C. and sent to DOR on or about April 6, 2021 from Greene County, Missouri, within the Western District of Missouri. In truth and fact, CLEVELAND was aware and allowed W.C.'s signature to be forged on the aforementioned documents to receive the necessary mechanic's lien and title that would have allowed him to either keep or sell the vehicle in question and receive either the property in question or the illegal proceeds for its sale. All in violation of Title 18, United States Code, Section 1028A(a)(1).

## COUNT THREE
### (Money Laundering – 18 U.S.C. 1957)

On or about May 19, 2023, said date being approximate, within Greene County, Missouri, within the Western District of Missouri, DENNIS ARTHUR CLEVELAND knowingly engaged and attempted to engage in a monetary transaction, through or to a financial institution, affecting interstate commerce, from criminally derived property of a value greater than $10,000. CLEVELAND knowingly caused the sale of a previously stolen 2021 Toyota Corolla to occur after causing fraudulently submitted repossession title documents to be submitted to DOR. These fraudulent documents resulted in CLEVELAND receiving a fraudulent repossession title for the 2021 Toyota Corolla, that CLEVELAND then sold for an amount greater than $10,000, which was then deposited by CLEVELAND into his Oakstar bank account. All in violation of Title 18, United States Code, Section 1957.

At all points in time during this scheme, the actions either taken or resulted at the direction of CLEVELAND were initiated in Greene County, Missouri, within the Western District of Missouri.

4. **Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range

4

under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant=s offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that the conduct charged in any dismissed counts of the indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2) in calculating the offense level for the charges to which he is pleading guilty.

5. **Statutory Penalties.** The defendant understands that upon his plea of guilty to Count 1 of the Information charging him with Mail Fraud, the maximum penalty the Court may impose is not more than 20 years of imprisonment, a $250,000 fine, three years of supervised release, a $100 mandatory special assessment, and an order of restitution. The defendant further understands that this offense is a Class C felony. Further, upon his plea of guilty to Count 2 of the Information charging him with Aggravated Identity Theft, the maximum penalty the Court may impose is not less than 2 years of imprisonment, run consecutively to all other counts, a $250,000 fine, one year of supervised release, a $100 mandatory special assessment, and an order of restitution. The defendant further understands that this offense is a Class E felony. Finally, upon his plea of guilty to Count 3 of the Information charging him with Money Laundering, the maximum penalty the Court may impose is not more than 10 years of imprisonment, a $250,000 fine, up to three years of supervised release, a $100 mandatory special assessment, and an order of restitution. The defendant further understands that this offense is a Class C felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

>    a. in determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the

5

Court may impose a sentence either less than or greater than the defendant=s applicable Guidelines range, unless the sentence imposed is "unreasonable";

b. the Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

c. in addition to a sentence of imprisonment, the Court may impose a term of supervised release of up three years for Counts One and Three of the Information, and one year for Count Two; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

d. if the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two years for Counts One and Three, and one year for Count Two of the Information without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed three years for Counts One and Three, and one year for Count Two of the Information, less the term of imprisonment imposed upon revocation of the defendant=s first supervised release;

e. the Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

f. any sentence of imprisonment imposed by the Court will not allow for parole;

g. the Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

h. the defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

i. The defendant agrees that the United States may institute civil, judicial or administrative forfeiture proceedings against all forfeitable assets in which the defendant has an interest, and that he will not contest any such forfeiture proceedings.

j. The defendant agrees to forfeit all interests he owns or over which he exercises control, directly or indirectly, in any asset that is subject to forfeiture to the United States either directly or as a substitute for property that was subject to forfeiture but is no longer available for the reasons set forth in 21 U.S.C. § 853(p), including, but not limited to, the following specific property: a money judgment.

6

With respect to any asset which the defendant has agreed to forfeit, the defendant waives any constitutional and statutory challenges in any manner (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this plea agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment under the Eighth Amendment to the United States Constitution.

k. The defendant agrees to fully and truthfully disclose the existence, nature and location of all assets forfeitable to the United States, either directly or as a substitute asset, in which he and his co-conspirators have or had any direct or indirect financial interest, or exercise or exercised control, directly or indirectly, during the period from 2019 to the present. The defendant also agrees to fully and completely assist the United States in the recovery and forfeiture of all such forfeitable assets.

l. The defendant agrees to take all necessary steps to comply with the forfeiture matters set forth herein before his sentencing.

m. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit: (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that the United States will use the financial information when making its recommendation to the Court regarding the defendant=s acceptance of responsibility.

**7. Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney=s Office for the Western District of Missouri, as part of this plea agreement, agrees not to bring any additional charges against defendant for any federal criminal offenses related to the Information for which it has venue, and which arose out of the defendant=s conduct described above.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

**8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to comments made or positions taken by the defendant or the defendant=s counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant=s plea of guilty and

8

its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his pleas of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that is outside the defendant's applicable Sentencing Guidelines range or imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

**10. Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant=s applicable Guidelines range, provided the sentence imposed is not "unreasonable";

    b. The applicable Guidelines section that controls is U.S.S.G. § 2B1.1, which provides for a base offense level of 7;

    c. The parties may argue at sentencing any other applicable enhancements or reductions;

    d. The defendant has admitted his guilt and clearly accepted responsibility for his actions and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty pleas, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

    e. The parties agree that the Court will determine his applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

9

f. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does not bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

g. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant=s sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment), and any legally authorized increase above the normal statutory maximum. The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed, and waives any right to have those facts alleged in the Information. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay;

h. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement.

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

10

13. **Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

   a. oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

   b. comment on the evidence supporting the charges in the Information;

   c. oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

   d. oppose any post-conviction motions for reduction of sentence, or other relief.

14. **Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

   a. the right to plead not guilty and to persist in a plea of not guilty;

   b. the right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

   c. the right to a jury trial, and at that trial, the right to the effective assistance of counsel;

   d. the right to confront and cross-examine the witnesses who testify against him;

   e. the right to compel or subpoena witnesses to appear on his behalf; and

   f. the right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court

11

may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

### 15. Waiver of Appellate and Post-Conviction Rights.

    a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

    b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government=s appeal, cross-appeal his sentence as authorized by 18 U.S.C. § 3742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

### 16. Financial Obligations.
By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

    a. The Court must order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Information or indictment which are to be dismissed and all other uncharged related criminal activity;

    b. Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, Defendant agrees that the schedule of payments is a schedule of the minimum payment due, and that the

12

payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full.

 c. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

 d. The defendant hereby authorizes the United States Attorney's Office ("USAO") to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence.

 e. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $300 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk=s receipt as evidence of his fulfillment of this obligation at the time of sentencing.

 f. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future.

 g. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

**17. Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive, or to authorize any third party to request or receive, from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including any records that may be sought under the

13

Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

**18. Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

**19. Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

**20. Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with

14

this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

21. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties= agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their

15

normal and ordinary meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

R. Matthew Price
United States Attorney

Dated: 12/12/2025

Patrick Carney
Assistant United States Attorney

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Information. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 11-26-25

Dennis Arthur Cleveland
Defendant

I am defendant Dennis Arthur Cleveland's attorney. I have fully explained to him his rights with respect to the offenses charged in the Information. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Dennis Arthus Cleveland's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 11-25-2025

Marshall Miller
Attorney for Defendant